IN THE UNITED STATES DISTRICT COURT FILED
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION 2016 MAR 31 AM 9: 59

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ EC
DEPUTY

| | | |
|---|---|---|
| EDUARDO VALLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO.  EP-12-CV-492-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.  For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On October 6, 2009, Plaintiff filed an application for DIB in which he alleged disability beginning May 13, 2009 due to hepatitis C, diabetes, liver problems, high blood pressure, and sleep

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

1

apnea.  (R. 152, 199).[2]  Plaintiff was 61 years old at the time of filing.  (R. 152).  He has a high school diploma, attended four or more years of college, and has previous work experience as an account manager, administrative manager, finance manager, and controller.  (R. 201, 204).

After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (R. 46-54, 56-60).  On May 18, 2011, he appeared with his attorney for a hearing.  (R. 280-303).  On July 1, 2011, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform his past relevant work as an account manager; therefore, he is not disabled.  (R. 13-20).  On October 16, 2012, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision.  (R. 1-5).

## II. ISSUE PRESENTED

Whether the ALJ's failure to consider the severity and limiting effects of Plaintiff's chronic fatigue syndrome warrants remand.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant

---

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of

3

impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In his written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (R. 15). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged amended onset date of January 1, 2011.[3] *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of non-insulin dependent diabetes type II; osteoarthritis, unspecified; hypertension,

---

[3] At the hearing, Plaintiff moved to amend the onset date to January 1, 2011. (R. 35-36). When questioned by the ALJ at the hearing, Plaintiff admitted he stopped working on January 1, 2011 when the company closed down. (R. 32-33). Prior to the company closing, Plaintiff worked 20 hours per week as a manager.

benign; and, chronic hepatitis C.  At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 16).

Before reaching step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found he is able to perform  light work,[4] except he can occasionally climb ladders, ropes, or scaffolds; can occasionally balance, stoop, and crouch, and can frequently climb ramps and stairs, kneel, and crawl.  *Id.*  In making this RFC assessment, the ALJ determined Plaintiff's allegations regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (R. 17).

At step four, the ALJ found that all of Plaintiff's past relevant work as an account manager was considered sedentary and skilled.  (R. 19).  The ALJ further found the physical and mental demands of Plaintiff's past relevant work did not exceed his RFC.  (R.19-20).  Thus, the ALJ concluded that Plaintiff is able to perform his past relevant work as an account manager as performed by him and, therefore, is not disabled.  *Id.*

D. Analysis of Plaintiff's Claim

Plaintiff contends the ALJ erred by failing to consider the nature, severity and limiting effects of his chronic fatigue syndrome.   According to Plaintiff, this failure resulted in an RFC determination that is not supported by substantial evidence and taints all remaining steps in the sequential evaluation.  Therefore, Plaintiff argues, remand is required.

---

[4] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

RFC is defined as the most an individual can still do despite his limitations.  20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p[5].  The responsibility to determine the claimant's RFC belongs to the ALJ.  *Ripley*, 67 F.3d at 557.  In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations.  20 C.F.R. § 404.1545.  The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms.  *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p.  The relative weight to be given to the evidence is within the ALJ's discretion.  *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).  The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff bears the burden to establish disability by providing or identifying medical and other evidence of his impairments.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(c); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  There is no burden on the Commissioner to prove the absence of a claimant's alleged impairment.  *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  It is clear that the claimant "must prove the existence of an impairment."  *Randall v. Astrue*, 570 F.3d 651, 657-58 (5th Cir. 2009).

A medically determinable impairment must be established by acceptable medical sources.  20 C.F.R. § 404.1513(a).  Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1508, 404.1528,

---

[5] SSR 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (July 2, 1996).

6

404.1529. Additionally, symptoms such as fatigue and weakness will not be found to affect a claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. 20 C.F.R. § 404.1529(b).

Broadly speaking, chronic fatigue syndrome ("CFS") is characterized by persistent fatigue, unexplained by association with another disorder, and causing substantial reduction in functioning. *See Mettlen v. Comm'r of Soc. Sec. Admin.*, 2003 WL 1889011, at *5 (N.D. Tex. 2003) (citing DORLAND'S ILLUS. MEDICAL DICTIONARY, 29th ed.). The agency has addressed the criteria for establishing CFS as a medically determinable impairment in SSR 99-2p[6] which has a three-fold purpose: (1) to define CFS in accordance with the definition established by the Center for Disease Control and Prevention ("CDC"); (2) to establish requirements by which CFS can be found to be a medically determinable impairment that can be the basis for disability; and, (3) to guide adjudicators in evaluating claims involving CFS. *See Mettlen,* 2003 WL 1889011, at *5.

As outlined in the Ruling, under the CDC definition, the hallmark of CFS is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset (i.e., has not been lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. Additionally the current CDC definition of CFS requires the concurrence of 4 or more of the following symptoms, all of which must have persisted or recurred during 6 or more consecutive months of illness and must not have pre-dated the fatigue:

---

[6]SSR 99-2p, *Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)*, 1999 WL 271569 (Apr. 30, 1999).

Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;
Sore throat;
Tender cervical or axillary lymph nodes;
Muscle pain;
Multi-joint pain without joint swelling or redness;
Headaches of a new type, pattern, or severity;
Unrefreshing sleep; and
Postexertional malaise lasting more than 24 hours.

Within these parameters, an individual with CFS can also exhibit a wide range of other manifestations, such as muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), orthostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information,), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety).

SSR 99-2p, 1999 WL 27159, at *1-2.

Under the CDC definition, the diagnosis of CFS can be made on an individual's reported symptoms alone once the possible causes for the symptoms have been ruled out.  SSR 99-2p, 1999 WL 27159, at *2. Under the Social Security Act, however, an individual's reported symptoms alone are insufficient to establish the existence of a medically determinable impairment of CFS.  *Id.*; *Mettlen*, 2003 WL 1889011, at *6.   Before the existence of a medically determinable impairment of CFS may be established, the claimant must show one or more medical signs, clinically documented over a period of at least 6 consecutive months, such as:

Palpably swollen or tender lymph nodes on physical examination;
Nonexudative pharyngitis;
Persistent, reproducible muscle tenderness on repeated examinations, including the presences of positive tender points; or,
Any other medical signs that are consistent with medically acceptable clinical practice and are consistent with the other evidence in the case record.

SSR 99-2p, 1999 WL 27159, at *3.

As pointed out in the Commissioner's brief, Plaintiff does not acknowledge either the CDC diagnostic criteria or SSR 99-2p and does not attempt to link any evidence of record to either of these authorities.  In support of his contention that the ALJ committed reversible error by failing to consider the nature, severity and limiting effects of his chronic fatigue syndrome, Plaintiff cites to subjective evidence including his testimony at the administrative hearing and his self-reported symptoms of fatigue.  (R. 33, 35-36,199-200, 221, 224-225).  He also cites to a portion of the medical summary prepared by a treating physician practicing in Ciudad Juarez, Chihuahua, Mexico. (R. 318-19).  A review of the cited evidence, however, shows Plaintiff has not met his burden of presenting evidence that CFS constituted a medically determinable impairment during the time period at issue.

Plaintiff testified he stopped working "[f]irst of all" because the company closed, and secondly, because he began having health problems three years earlier that caused him to work only part time.  (R. 33). When asked what those health problems were, Plaintiff identified them as diabetes, high blood pressure, hepatitis, and foot and back pain.  (R. 34-35).   When asked by the ALJ how often he has to lie down due to chronic fatigue, Plaintiff explained **"[t]hat condition is really caused by all the other ones**, and it can come at any time causing me to have to sit down for a little while or lay down for a little while. I feel like I have lost all my strength." (R. 35) (emphasis added).  Although Plaintiff indicated he began to work part time due to health problems, he also testified, "... [T]he company noticed it really wasn't necessary to have a person for the full-time position. That's why they agreed to have me as a part-time employee." (R. 33, 36).

In an undated Disability Report, Plaintiff listed the conditions that limit his ability to work as hepatitis C, diabetes, liver problems, hypertension, and sleep apnea.  (R. 199). Plaintiff did not

list chronic fatigue syndrome as one of his conditions. He reported his conditions limit his ability to work because he gets very fatigued; he can't sit or stand for long periods; he can't walk up stairs, or carry/lift anything heavy; he has nausea due to medications; and his back, kidneys, and legs hurt. (R. 200).

In a Function Report dated November 18, 2009, Plaintiff reported his legs hurt when he walks, and he feels tired and fatigued, and his impairments affect his ability to lift, stand, walk[7], sit, kneel, climb stairs, and complete tasks. (R. 221, 224). Plaintiff also reported he never took naps in the past, but now his fatigue causes him to "sleep spontaneously" at any time of the day, depending on how he spent the night.[8] (R. 225).

As for objective medical evidence, Plaintiff also cites to a portion of the medical summary prepared by Dr. Mario Legarreta Martinez, a physician practicing in Ciudad Juarez, Chihuahua, Mexico. (R. 318-19). As discussed by the ALJ, the medical summary by Dr. Martinez (translated from Spanish to English) indicates that at Plaintiff's first visit on February 22, 2010, the diagnoses were chronic fatigue syndrome, andropause, diabetes mellitus type 2, and chronic gastritis.[9] (R. 18, 316). The physical examination revealed a tumor at the nape of the neck[10] and a slightly enlarged

---

[7] The Court notes that in the same report, however, Plaintiff stated he goes to the park daily to walk for one hour. (R. 222).

[8] The Court notes that when asked in the same report how his impairments affect his sleep, Plaintiff stated, "It has produced me so much stress that I wake up constantly." (R. 221).

[9] Neither chronic hepatitis C nor hypertension are included in the diagnoses section of the report for that date. The notes dated June 6, 2010, state that "[n]o abnormal hepatic activity is documented that would indicate hepatic cirrhosis." (R. 317).

[10] The report indicates the tumor, a fatty fibroma, was removed on July 10, 2010 without any complications. (R. 317).

prostate.  Laboratory studies were recommended to evaluate Plaintiff's subjective complaints of hypostenia (lack of strength), hypodynamia (lack of power), loss of libido, myalgias (muscle pain) in arms and legs, difficulty in concentration for the past six months, and dyspepsia disorders.  (R. 316).  Although the report indicates "the studies that were done are attached," there are no attachments to the summary.  (R. 318).

Notes from the follow up visit on February 27, 2010 indicate the laboratory results showed elevated hematocrit.  "[T]he rest is normal."  (R. 316).  Plaintiff's thyroid was within normal limits.  Glucose, cholesterol and triglycerides were high.  (R. 317).  A low cholesterol diet and exercise were recommended.  *Id.*  The notes indicate Plaintiff stated he doesn't exercise because he tires.  *Id.*

According to the summary, on June 6, 2010, Plaintiff requested Dr. Martinez perform an evaluation for work disability.  As quoted by the ALJ in his opinion, Dr. Martinez opined that Plaintiff has no movement limitations, and no limitations in walking or in manipulating objects with his hands.  (R. 18, 317).  Dr. Martinez further opined that Plaintiff's symptoms of hypostenia (lack of strength), hypodynamia (lack of power), chronic tiredness, myalgias (muscle pain), and loss of mental concentration **"could** be related to chronic fatigue syndrome, that being a subjective symptom is difficult to demonstrate through clinical tests.  It would be necessary to do profound studies to determine this syndrome and if disabling.  The chronic fatigue syndrome **could** cause disability to work because it affects mental concentration in addition to the fatigue the patient displays." *Id.* (emphases added).  Isolated statements, such as the mention by Dr. Martinez of CFS as a possible impairment, are insufficient to establish the presence of an impairment, particularly when the claimant did not allege the impairment as a basis for disability.  *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); *see also Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989) (isolated

11

comments insufficient to raise a suspicion of an impairment).

The record does not contain a diagnostic finding of CFS that is supported "by medically acceptable clinical and laboratory diagnostic techniques" as required by 42 U.S.C. § 423(d)(3). In fact, although CFS was listed by Dr. Martinez as one of Plaintiff's diagnoses, Dr. Martinez's medical summary makes clear that it has not been confirmed with the proper testing that Plaintiff has CFS. At most, Dr. Martinez opines that Plaintiff **could** have CFS. Importantly, Plaintiff did not list CFS as one of his impairments when he applied for DIB. Additionally, at the hearing, Plaintiff's counsel asked the ALJ to consider an RFC for sedentary work due to Plaintiff's " back problems, Diabetes, high blood pressure, fatigue – he has Hepatitis C – from that chronic – from that Hepatitis C medication, and he has the CPAP machine for sleep apnea." (R. 32). Counsel did not include CFS when he summarized Plaintiff's conditions, and it appears counsel attributed Plaintiff's fatigue to hepatitis C medication. Additionally, Plaintiff testified his alleged CFS is caused by all of his other conditions. (R. 35). As noted in the CDC criteria for CFS, a proper diagnosis of CFS would have to exclude both hepatitis and sleep apnea as a source of Plaintiff's complaints of fatigue. SSR 99-2p, 1999 WL 271569, at *1-2.

The ALJ found Plaintiff was not fully credible. (R. 19). He noted the following. Plaintiff stopped working on May 13, 2009, the alleged onset date, due to a company layoff rather than due to allegedly disabling symptoms. (R. 19, 200). The ALJ further noted that the evidence revealed Plaintiff began to work part time for the same employer on November 23, 2009 and continued to work there until January 1, 2011, his amended onset date. (R. 19). Plaintiff testified at the hearing that he worked part time because the company did not think the position needed a full time employee. (R. 19, 36). Further, Plaintiff testified he stopped working in January 2011 because the

company closed down. (R. 19, 33). The ALJ stated it was reasonable to infer that Plaintiff could have continued working if the company had not closed down since he was performing his job adequately at the time of the closure. (R. 19). Assessment of credibility is the province of the ALJ, and his credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459.

Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529. The objective medical evidence does not support Plaintiff's contention that the ALJ improperly assessed his RFC. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (subjective complaints unsubstantiated by medical findings need not be credited over conflicting medical evidence). Simply stated, the evidence cited by Plaintiff does not establish the existence of CFS as a medically determinable impairment. Moreover, the cited evidence does not support the need for further limitations in his RFC than those assessed by the ALJ.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The task of the Court is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Id.* (citing *Greenspan*, 38 F.3d at 240). As substantial evidence supports the ALJ's decision, it must be affirmed.

13

CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this _31st_ day of March, 2016.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

14